Original
No. SMC-94-014

PETITION OF PETER HOE BURLING

December 29, 1994

*Peter Hoe Burling*, of Cornish, and *Foley, Hoag & Eliot*, of Boston, Massachusetts (*Mr. Burling*, and *James K. Brown* on the brief, and *Mr. Burling*, orally), for the petitioner.

*Shaines & McEachern, P.A.*, of Portsmouth (*Paul McEachern* on the brief and orally), for the professional conduct committee.

*Jeffrey R. Howard*, attorney general (*Patrick E. Donovan*, attorney, on the brief) for the State, as *amicus curiae*.

*Richard P. Bosa*, of Berlin, by brief, as *amicus curiae*.

*Henry H. Amsden*, of Concord, by brief, as *amicus curiae*.

BATCHELDER, J. The petitioner, Peter Hoe Burling, is a member of the New Hampshire Bar and, at the time the petition was filed, was a member of the New Hampshire House of Representatives. He petitions this court to release for public inspection "any and all professional conduct files as may be in existence regarding the late John Fairbanks, whether held by the Court or by the Professional Conduct Committee."

The petitioner argues that Supreme Court Rule 37(17), which provides that records and proceedings relating to allegations of attorney misconduct are confidential, should be interpreted to permit release of files relating to complaints against Fairbanks. In addition, he contends that release of the files is required by three provisions of the New Hampshire Constitution: part I, article 8 (open government); part I, article 22 (free speech); and part I, article 37 (separation of powers). We deny the petition.

In his brief, in addition to arguments specifically addressed to proceedings involving Fairbanks, the petitioner argues generally that we should amend Rule 37(17) to provide that all records of and proceedings before the professional conduct committee (committee) be made public upon a finding of probable cause that attorney misconduct has occurred, or upon the dismissal of a complaint. We decline, for two reasons, to address the petitioner's arguments regarding the general need to amend Rule 37(17). First, questions relating to the validity of Rule 37(17) were not included in the petition and the petitioner did not move for permission to add such questions. *See* SUP. CT. R. 16(3)(b). Second, the concerns raised by the petitioner are appropriately considered under the established rule-making process provided by Supreme Court Rule 51. The Supreme Court Advisory Committee on Rules is currently reviewing Rule 37 and issues raised by its confidentiality provision. We focus, therefore, on the specific question whether the circumstances of this case warrant waiver of the provisions of Rule 37(17).

"[T]he task of supervising and disciplining attorneys within this State falls squarely upon the shoulders of this court." *Astles' Case*, 134 N.H. 602, 605, 594 A.2d 167, 170 (1991). We have always had the inherent power "to take reasonable and expeditious action in the suspension or removal of members of the bar for the protection of the community." *Barnard's Case*, 101 N.H. 33, 34, 131 A.2d 630, 630 (1957); *see Delano's Case*, 58 N.H. 5, 5 (1876). Pursuant to part II, article 73-a of the State Constitution, RSA 490:4 (1983), and RSA chapter 311 (1984 & Supp. 1993), "this court . . . has established a professional conduct committee which has responsibility for regulating attorney conduct." *Rousseau v. Eshleman*, 128 N.H. 564, 567, 519 A.2d 243, 245 (1986). The committee is authorized, pursuant to rules established by this court, to consider, investigate, and determine the propriety of attorney conduct. *See* SUP. CT. R. 37(3)(c); *In re Grievance Procedures*, 115 N.H. 310, 312, 341 A.2d 272, 273 (1975). Attorney disciplinary proceedings are "not civil, or criminal or administrative in nature, but special in character, resulting from the inherent power of courts and to which not all of the ordinary procedural safeguards

apply." *State v. Merski*, 121 N.H. 901, 909, 437 A.2d 710, 714 (1981) (emphasis omitted), *cert. denied*, 455 U.S. 943 (1982).

██ Supreme Court Rule 37(17)(a) provides that "[a]ll records and proceedings involving allegations of misconduct by an attorney shall be confidential and shall not be disclosed . . . ." The rule establishes four exceptions to the confidentiality requirement: (1) "[w]hen the prosecution of formal charges is initiated [by the professional conduct committee] by the filing of a petition with the New Hampshire Supreme Court"; (2) "[w]hen an attorney seeks reinstatement"; (3) "[w]hen the attorney/respondent, prior to the filing of formal charges, requests that the matter be public"; and (4) "[i]f the investigation is predicated upon a conviction of the respondent for a crime or upon public discipline imposed upon the respondent in another jurisdiction . . . ." Thus, participants in committee investigations of a noncriminal nature, including attorneys, hold the expectation that unless one of the narrow exceptions delineated above applies, the proceedings will remain confidential.

██ Notwithstanding the provisions of Rule 37(17), this court possesses the inherent authority to compel the committee to disclose disciplinary records.

> Courts have an inherent power to make and follow rules governing such matters or to formulate new rules as the case demands so long as no right of the member charged is invaded. But the rules thus established do not restrict the general power of the courts; the power which establishes such rules in the first instance also enables the courts to disregard such rules and adopt the methods most suitable to the occasion.

*State v. Merski*, 121 N.H. at 908, 437 A.2d at 714 (quotation and emphasis omitted). The party requesting relief, however, must first establish that a sufficient basis exists for overriding the implicit concerns of Rule 37(17). *Cf. Petition of Keene Sentinel*, 136 N.H. 121, 129–30, 612 A.2d 911, 916 (1992); *State v. Gagne*, 136 N.H. 101, 104–05, 612 A.2d 899, 901 (1992).

This court has recognized that Rule 37(17) serves several purposes.

> The primary purpose underlying the imposition of confidentiality is to protect the reputation of an attorney. A second purpose is to protect the anonymity of complainants. A third purpose is to maintain the integrity of pending grievance committee investigations. It has been held that the privilege is not of the attorney alone but of the State bar. The attorney waives it when he places his reputation as an

> attorney in issue. But his waiver does not affect the privilege
> of the State bar acting for itself and the public. There is an
> equally weighty state interest, namely, that of preventing
> public disclosure that would endanger the interests of those
> from whom the State has obtained information on a
> confidential basis.

*State v. Merski*, 121 N.H. at 910, 437 A.2d at 715 (citations, quotations, ellipses, and brackets omitted).

██ Petitioner argues that in the particular circumstances of this case "where the attorney accused of misconduct had been subject to criminal indictment, had fled the jurisdiction, had taken on a false identity, and, finally, had died under an assumed name in Las Vegas—there are no individual interests to protect, and absolutely nothing to be gained by perpetuating the secrecy of the process." This argument, however, "seems to be grounded in the false premise that confidentiality is the defendant's right alone." *Id.* (quotation omitted). In this case there is "an equally weighty state interest," namely that of "preventing public disclosure that would endanger the interests of those from whom the state has obtained information on a confidential basis." *Id.* (ellipses, brackets, and quotation omitted). "Assurance of confidentiality is a major inducement by which the government elicits cooperation with legitimate state processes. To the extent that such assurances are not carried out, not only is the integrity of the government compromised, but the cooperation sought to be secured is threatened." *McLaughlin v. Philadelphia Newspapers, Inc.*, 348 A.2d 376, 383 (Pa. 1975). "Few would volunteer information if the confidentiality upon which they relied remained protected only until such time as the information became too newsworthy, or the subject of the information too important." *Id.*

██ The petitioner does not suggest that he was a complainant or a witness in any committee proceedings which may have been conducted. Nor is there any indication in the record that any participants in any proceedings have waived protection of the confidentiality provision. Rather, the interests set forth by the petitioner in support of disclosure of committee proceedings involving Fairbanks include assuring "the public (and the Court) . . . that those proceedings were properly handled" and "accommodat[ing] the public interest in disclosure" and "overcom[ing] the public's perception of indifference to its concerns caused by secret proceedings." We are not persuaded that these general allegations of impropriety by the committee and of the public's interest in the committee's investigation of Fairbanks present a sufficient basis in this particular case on which to override the purposes underlying the rule, which include protecting the anonymity of complainants who

desire that their complaints remain confidential and not deterring others from complaining in the future.

The petitioner also contends that part I, article 8 and part I, article 22 of the New Hampshire Constitution "compel[] the public release of all prior records involving John Fairbanks." Part I, article 8 provides that "[g]overnment . . . should be open, accessible, accountable, and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted." Petitioner argues that this provision mandates that the committee "provide a written explanation of its findings regarding *all* complaints about John Fairbanks, and open the underlying files to public scrutiny."

■ As a separate and coequal branch of government, the judiciary is constitutionally authorized to promulgate its own rules. N.H. CONST. pt. I, art. 37, pt. II, art. 73-a. Attorney conduct rules are "self-imposed internal regulations prescribing the standards of conduct for members of the bar." *State v. Decker*, 138 N.H. 432, 439, 641 A.2d 226, 230 (1994) (quotation omitted). As explained above, Rule 37(17) establishes a qualified guarantee of confidentiality for committee proceedings which must yield when one of the four exceptions are met or when this court orders disclosure. Because the rule is supported by a weighty State interest and is not a complete bar to disclosure, it can only be viewed as a reasonable restriction on the public's right of access. *Cf. Union Leader Corp. v. Fenniman*, 136 N.H. 624, 620 A.2d 1039 (1993).

Part I, article 22 provides that "[f]ree speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved." The petitioner argues that because it is not until a disciplinary case is referred to this court that the confidentiality rule is lifted, "[a] claimant may well be forever precluded from disclosing the existence of a claim, even after it has been dismissed." Thus, he argues that the rule imposes an unreasonable restriction on speech in violation of the Constitution.

In support of his position, the petitioner cites *Doe v. Supreme Court of Florida*, 734 F. Supp. 981 (S.D. Fla. 1990). In *Doe*, a client, whose complaint filed with the Florida bar against his former attorney was determined to be well founded, successfully alleged that the Florida bar rule prohibiting a participant or complainant from disclosing information involving disciplinary proceedings violated the free speech protection of the first amendment to the United States Constitution. The petitioner before us was neither a complainant nor participant in any proceedings involving Fairbanks. The question becomes, therefore, whether he has standing to raise this constitutional challenge.

██ ██ The general rule in this State is that "a party has standing to raise a constitutional issue only when his own personal rights have been or will be directly and specifically affected." *Appeal of Richards*, 134 N.H. 148, 154, 590 A.2d 586, 590, *cert. denied*, 112 S. Ct. 275 (1991). Such a rule "frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy, and it assures the court that the issues before it will be concrete and sharply presented." *Secretary of State of Md. v. J.H. Munson Co.*, 467 U.S. 947, 955 (1984) (quotation and citation omitted). In the context of the first amendment, the United States Supreme Court has in some cases, in order to protect civil rights, lessened the limitations on standing to allow a third party to assert the rights of another. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Here, any claimant or participant in any committee proceedings involving Fairbanks may assert his or her rights in an independent action. Moreover, the petitioner may be asserting "rights which those not before the Court may not wish to assert" and may not in fact be the "most effective advocate of the rights at issue." *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 80 (1978). We conclude that granting the petitioner standing is not necessary to protect the rights of third parties, and we need not reach the merits of this issue.

Finally, the petitioner raises the issue whether part I, article 37 of the New Hampshire Constitution gives this court sole and exclusive jurisdiction over all disciplinary proceedings for members of the New Hampshire Bar or whether the court's jurisdiction "overlaps" with that of the legislature. The petitioner suggests that as a member of the house of representatives he may initiate "legislative hearings and/or legislation to cure the shortcomings in Rule 37(17)," including a requirement that inquiries into attorney misconduct be made public. He questions whether such action would violate the separation of powers doctrine.

██ ██ In the past we have noted that "[t]he power to regulate officers of the court is a power inherent in the judicial branch." *Smith v. State*, 118 N.H. 764, 770, 394 A.2d 834, 838–39 (1978). Given, however, that "advisory opinions cannot be given by this court on the petition of private individuals," *State v. Harvey*, 106 N.H. 446, 448, 213 A.2d 428, 430 (1965), we offer no opinion whether any such future legislation would violate part I, article 37. Such an analysis is not relevant to the specific issue raised by this petition.

In exercising the power to discipline members of the bar, we have the obligation both to protect the public and to promote confidence in and respect for the bar. To that end, this court promulgates procedures governing professional discipline that are emblematic of the character

of the profession. Accordingly, the petitioner's allegations that the confidential nature of the committee's proceedings may shield unscrupulous members of the bar and is more likely to engender suspicion than foster confidence raise issues of utmost concern to this court. Resolution of these issues does not lie, however, through this petition.

*Petition denied.*

All concurred.